UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RAWLEY ALEXANDER DOYLE,

    Plaintiff,

v.                                                                         Case No: 8:16-cv-2216-T-30JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, Rawley Alexander Doyle, seeks judicial review of the denial of his claims for a period of disability, disability insurance benefits, and supplemental security income. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Court recommends that the decision be affirmed.

### BACKGROUND

**A.    Procedural Background**

Plaintiff filed an application for disability insurance benefits on April 24, 2013, and an application for supplemental security income on April 7, 2014. (Tr. 151–65.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 73–92.) Plaintiff then requested an administrative hearing. (Tr. 106.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 31–66.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and, accordingly, denied Plaintiff's claims for benefits. (Tr. 12–25.) Subsequently, Plaintiff requested review from the Appeals Council, which

the Appeals Council denied. (Tr. 1–11.) Plaintiff then timely filed a Complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1975, claimed disability beginning on June 1, 2008. (Tr. 15, 73, 153, 160.) Plaintiff has at least a high school education, and testified that he has a Bachelor of Science degree. (Tr. 24, 35–36.) The ALJ determined that Plaintiff could not perform his past relevant work as a delivery driver, check casher, assistant retail manager, telephone solicitor, or insurance salesman. (Tr. 23.) Plaintiff alleged disability due to spasticity, "drop foot," depression, anxiety, attention deficit disorder ("ADD"), gastritis, gastroesophageal reflux disease ("GERD"), and bipolar disorder. (Tr. 180.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since June 1, 2008, the alleged onset date. (Tr. 17.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: history of cervical fusion, GERD, major depression, ADD, and a history of alcohol dependence, which was in remission. (Tr. 18.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18–20.) The ALJ then concluded that Plaintiff retained the following residual functional capacity ("RFC"):

> to perform medium work . . . except, the claimant is limited to routine, repetitive tasks not performed in a fast paced production environment, and involving only simple work related decisions. In general, the claimant can have only few work place changes. Finally, he is limited to occupations that do not involve the handling, sale, or access to alcoholic beverages.

(Tr. 20.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that

reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not fully credible. (Tr. 21.)

The ALJ determined that Plaintiff could not perform past relevant work. (Tr. 23–24.) Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a cleaner, an "order selector warehouse," and a hand packager. (Tr. 24–25.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 25.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-

related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the

correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ erred in his evaluation of a treating physician's opinion, and (2) the ALJ erred in discrediting Plaintiff's testimony regarding his symptoms. For the reasons that follow, these contentions do not warrant reversal.

### A. Treating Physician's Opinion

Plaintiff argues that the ALJ erred by according treating physician Dr. Jeffrey Hoffman's opinions less than substantial weight. Dr. Hoffman began treating Plaintiff in September 2010 when he evaluated Plaintiff for depression. (Tr. 588–89.) In notes from his first evaluation of Plaintiff, Dr. Hoffman explained that Plaintiff has a history of depression and substance abuse. (Tr. 588.) At the time of the evaluation, Dr. Hoffman noted that an antidepressant medication "substantially" helped Plaintiff's symptoms of depression and that his anxiety medications had "some good effect." (Tr. 588.) Dr. Hoffman noted that Plaintiff was "sloppily dressed and groomed," but was alert, made good eye contact, had "intact" concentration, and fair insight and judgment. (Tr. 589.) In October 2010, Plaintiff reported improvements from his antidepressant medication, including "sleeping and eating well," enjoying himself, and "get[ting] things done that he needs to do." (Tr. 590.) He exhibited good eye contact, concentration, insight, and judgment. (Tr. 590.) In notes from an October 2010 evaluation, Plaintiff reported difficulties with concentration and focus. (Tr. 591.) Dr. Hoffman noted that Plaintiff's concentration during the examination was intact, but began Plaintiff on a regimen of treatment with Adderall because Plaintiff reported that Adderall had effectively treated his ADD symptoms in the past. (Tr. 591.)

In November 2010, January 2011, and March 2011 evaluations, Dr. Hoffman noted that, after prescribing Plaintiff Adderall, Plaintiff reported improved concentration and focus, and his concentration was found to be intact. (Tr. 593–96, 598.) In a March 2011 evaluation, Dr. Hoffman explained that Plaintiff "spends his days watching TV, playing video games, [ ] talking to friends," and attending Alcoholics Anonymous ("AA") meetings. (Tr. 595.) In July 2012 treatment notes, Dr. Hoffman noted that Plaintiff was sober again after a brief relapse, and that he recently started working at a pizza shop. (Tr. 599.) Plaintiff reported doing well at his job at the pizza shop during September and December 2012 evaluations, and requested a higher dosage of Adderall during his December 2012 evaluation. (Tr. 601.) In March 2013 treatment notes, Plaintiff reported leaving his job at the pizza shop due to "transportation problems," and that he started work as a dishwasher. (Tr. 603.) Plaintiff also reported that his higher dosage of Adderall improved his focus and attention. (Tr. 603.) In June 2013 treatment notes, Plaintiff reported that his dishwashing job was going well, although he was "slow." (Tr. 604.) Plaintiff reported that his ADD was controlled by his Adderall, although the medication does wear off. (Tr. 469.) Plaintiff was "weepy, sad and at times despondent" in evaluations beginning in January 2014, after Plaintiff broke up with his girlfriend. (Tr. 470, 471, 472.) Plaintiff reported difficulties with mood and sleep during a March 2014 evaluation, but also reported that Adderall helped his focus and attention. (Tr. 473.)

In November 2014, Dr. Hoffman completed a mental RFC assessment of Plaintiff. (Tr. 641–43.) Dr. Hoffman opined that Plaintiff was totally unable to perform on a sustained basis in eighteen out of twenty-five areas of functioning under the categories of understanding and memory, sustained concentration and persistence, social interaction, adaption, and making personal-social adjustments. (*Id.*) In the remaining seven areas, Dr. Hoffman found Plaintiff not totally precluded, but substantially impaired "in terms of speed or accuracy of carrying out the task

and can only be engaged in occasionally or seldom during an eight hour day; e.g., short durations (5-15 minutes) not totaling more than two· hours in an eight hour day." (Tr. 641.) Dr. Hoffman found that simple, routine, and repetitive work would exacerbate Plaintiff's psychologically-based symptoms, that emotional factors contributed to the severity and limiting effect of Plaintiff's symptoms, and that Plaintiff's symptoms' severity would "constantly" interfere with his attention and concentration. (Tr. 643.)

The ALJ evaluated Dr. Hoffman's mental RFC assessment. (Tr. 22–23.) He noted that Dr. Hoffman "severely limited [Plaintiff's] ability to perform *any* work related functions." (Tr. 22) (emphasis in original.) The ALJ found that Dr. Hoffman's opinion that Plaintiff was unable to sustain concentration was unsupported by Dr. Hoffman's treatment notes, which the ALJ found showed that Plaintiff had intact concentration. (Tr. 22–23.) Further, the ALJ found that none of Dr. Hoffman's treatment notes contained an assessment that Plaintiff was unable to work. (Tr. 23.) Finally, the ALJ reasoned that Dr. Hoffman's global assessment functioning ("GAF") scores indicated that Plaintiff had only mild to moderate symptoms, which contradicts Dr. Hoffman's finding that Plaintiff is unable to function in a work environment. (*Id.*) Accordingly, the ALJ gave Dr. Hoffman's opinions in his mental RFC assessment "no weight." (Tr. 23.)

Plaintiff argues that the ALJ's discrediting Dr. Hoffman's opinion about Plaintiff's ability to sustain concentration was improper because "the ability to concentrate during a medical treatment visit is not the same as the ability to maintain concentration over an eight hour workday." (Dkt. 15 at 15.) In response, Defendant argues that Dr. Hoffman noted consistently in his treatment notes that Plaintiff had "intact" concentration during his examinations and that Plaintiff's reported issues with concentration and focus were improved with his use of his prescribed Adderall. (Dkt. 19 at 8.)

Further, Plaintiff argues that Dr. Hoffman's treatment notes show that Plaintiff could not sustain adequate concentration for his dishwashing job. (Dkt. 15 at 15.) A review of Dr. Hoffman's treatment notes show, however, that Plaintiff left his pizza shop job because of "transportation problems," and that Plaintiff was doing well at his dishwashing job. (Tr. 599, 601, 603, 604.) At his hearing before the ALJ, Plaintiff testified that his father "pretty much demanded" that he quit his pizza delivery job because the costs of repairing his car exceeded Plaintiff's earnings. (Tr. 42–43.) Plaintiff testified that he worked as a kitchen helper in the pizza shop for three days, but was fired for being "too slow." (Tr. 43.) As the ALJ noted (Tr. 23), Plaintiff's employer at the pizza shop submitted a letter on Plaintiff's behalf in which he stated that Plaintiff was personable and got along well with others. (Tr. 478.) His employer explained that Plaintiff's father would not allow him to deliver pizzas, and that Plaintiff's attempt to work in the kitchen was unsuccessful. (Tr. 278.) His employer stated, however, that Plaintiff was eligible to be rehired as a pizza delivery driver if he has a reliable car. (Tr. 278.)

As to his dishwashing job, while Dr. Hoffman reported that Plaintiff was not working as of August 2013 (Tr. 467), Dr. Hoffman did not state that concentration was the reason for Plaintiff's leaving his dishwashing job. Plaintiff testified that he worked as a dishwasher, but "that ended" because the "owner complained about [Plaintiff's] ability to close quickly." (Tr. 43–44.) He returned, however, a couple of months later to fill in for someone. (Tr. 44.) Thereafter, he called in sick, and so his employer found a replacement; Plaintiff testified that he has "not gone back since." (Tr. 44.) Thus, the evidence shows that Plaintiff's dishwashing job was unsuccessful due to a combination of his absences and his slowness, rather than concentration issues.

Finally, Plaintiff argues that the ALJ erred in relying on Dr. Hoffman's GAF scores in his evaluation of Dr. Hoffman's opinion. In response, Defendant argues that the ALJ's consideration

of Plaintiff's GAF was proper, as the ALJ must consider all the evidence, and that this was only one factor that contributed to the ALJ's discrediting Dr. Hoffman's opinion. (Dkt. 19 at 10–11.)

Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairments, including the claimant's symptoms, diagnosis, prognosis, ability to perform despite impairments, and physical or mental restrictions. *Winschel v. Comm'r Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (internal quotation and citation omitted). When assessing the medical evidence, the ALJ must state, with particularity, the weight afforded to medical opinions and the reasons for such assignment of weight. *Id.* at 1179

A treating physician's opinion is "given substantial or considerable weight unless good cause is shown to the contrary." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see* 20 C.F.R. § 404.1527(c)(2) ("If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). The more that a medical opinion presents relevant supporting evidence, is explained, and is consistent with the record as a whole, the more weight it is given. 20 C.F.R. § 404.1527(c)(3), (4). Good cause exists when the doctor's opinion is not bolstered by the evidence, the evidence supported a contrary finding, or the doctor's opinion is conclusory or inconsistent with his or her own medical records. *Winschel*, 631 F.3d at 1179.

Contrary to Plaintiff's argument, the ALJ articulated good cause for not affording Dr. Hoffman's opinion substantial weight. Specifically, the ALJ found the information contained in Dr. Hoffman's treatment notes inconsistent with the extent of limitations Dr. Hoffman opined in

his mental RFC assessment. (Tr. 22–23.) Upon review of Dr. Hoffman's treatment notes, the Court finds the ALJ's reasoning supported by substantial evidence.

First, Dr. Hoffman's mental RFC assessment did not provide supporting, objective clinical findings, despite the form instructing Dr. Hoffman to provide this supporting information. (Tr. 643.) Plaintiff argues that Dr. Hoffman's treatment notes provide support for his opined limitations because Dr. Hoffman noted Plaintiff's poor appearance and grooming at his examinations, demonstrating that Plaintiff was unable "to maintain basic standards of self-care." (Dkt. 15 at 15–16; Dkt. 22 at 2.) However, Dr. Hoffman's opinions "may be discounted" because they were "not accompanied by objective medical evidence." *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *Brown v. Comm'r of Soc. Sec.*, 442 F. App'x 507, 512 (11th Cir. 2011) (finding that "the ALJ had good cause not to give controlling weight to [a treating physician's] opinions because the "opinions were conclusory, as the forms that he completed in 2007 and 2009 regarding [claimant's] limitations did not reference his treatment records or adequately explain his opinions"). Thus, Dr. Hoffman's opinion is not entitled to more weight as he does not cite relevant evidence in support of his opinions and does not provide an explanation of his opinions. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

Next, the ALJ's conclusion that Dr. Hoffman's findings that Plaintiff was unable to sustain concentration is contradicted by his own treatment notes (Tr. 22–23, 641), is supported by substantial evidence. Dr. Hoffman's September and October 2010 treatment records reflect that Plaintiff reported his ADD diagnosis and his past use of Adderall to treat his symptoms. (Tr. 588–

- 10 -

91.) In his second visit in September 2010, Dr. Hoffman noted that he would reassess Plaintiff at his next visit and "consider treating ADD depending on how his symptoms are going at that time." (Tr. 590.) During his next visit in October 2010, Plaintiff reported concentration and focus problems, and therefore Dr. Hoffman prescribed Plaintiff Adderall. (Tr. 591.) Thereafter, in November 2010, January 2011, March 2011, and September 2012 examinations, Plaintiff reported improved focus and concentration from his use of Adderall (Tr. 593–95, 601), and did not report focus or concentration issues in May 2011, April 2012, or July 2012 (Tr. 596–600.) In December 2012, Plaintiff reported that his "second dose of Adderall does not last throughout the day," so Dr. Hoffman increased his dosage. (Tr. 602.) In March 2013, Dr. Hoffman noted that this increased dosage "seems to be helpful in terms of [Plaintiff's] focus and attention." (Tr. 603.) Dr. Hoffman again raised Plaintiff's dosage in June 2013. (Tr. 604.) Thereafter, in August 2013, Plaintiff did not report focus or concentration issues to Dr. Hoffman, and, in October 2013, Dr. Hoffman stated that his symptoms were "controlled" by the Adderall, although it "wears off." (Tr. 467, 469.) Dr. Hoffman declined Plaintiff's request for a higher dose of Adderall in January and May 2014, stating that he did not think a higher dose was a "good idea" because it "probably represents a medication seeking solution to his sadness." (Tr. 471, 476.) Plaintiff reported that the Adderall helped his focus and attention in a March 2014 visit. (Tr. 473.)

A review of Dr. Hoffman's treatment notes demonstrates that Plaintiff had difficulties with concentration and focus due to his ADD impairment, but that his use of Adderall controlled and improved these symptoms, and that Dr. Hoffman declined Plaintiff's requests to increase Plaintiff's dosage. Therefore, the ALJ's decision to give Dr. Hoffman's opinion that Plaintiff had little to no ability in the areas of sustained concentration and persistence less than substantial weight is supported by substantial evidence. *See Brown*, 442 F. App'x at 512 (finding that the

ALJ correctly discounted a treating physician's opinions because "[a]lthough [the treating physician] found that [claimant] was moderately limited in a number of areas, he repeatedly noted in his treatment notes that [claimant] had normal memory and concentration and no depression, hopelessness, anxiety, or racing thoughts.").

Finally, the Court rejects Plaintiff's assertion that the ALJ should not have considered Dr. Hoffman's GAF scores in evaluating Dr. Hoffman's opinions. (Dkt. 22 at 3–4.) GAF scores, although not determinative, "may be helpful in formulating a claimant's RFC." *Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 613 (11th Cir. 2015). And the Commissioner considers "all evidence in [a claimant's] case record" when making a disability determination. 20 C.F.R. § 404.1520(a)(3). Contrary to Plaintiff's argument (Dkt. 22 at 4), the ALJ did not use Dr. Hoffman's GAF scores in a "bare equation . . . to a level of functionality"; rather the ALJ compared the consistency of Dr. Hoffman's treatment notes (including the GAF scores), to Dr. Hoffman's opinions, and concluded these moderate to mild scores contradicted Dr. Hoffman's opinions of severe limitations. (Tr. 22.) The inconsistency of Dr. Hoffman's treatment notes with his opinions was a proper consideration in assigning weight to Dr. Hoffman's opinions. *Winschel*, 631 F.3d at 1179.

Accordingly, it is recommended that Plaintiff's first contention does not warrant reversal because the ALJ sufficiently articulated "good cause" for according Dr. Hoffman's opinions no weight, and this determination was supported by substantial evidence. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).

## B.     Plaintiff's Credibility

Plaintiff argues that the ALJ's reasoning for discrediting Plaintiff's allegations of the intensity, persistence, and limiting effects of his symptoms is "inconsistent with the substantial

evidence of record demonstrating ongoing and significant symptoms of depression despite medication and counseling." (Dkt. 15 at 19.)

If an ALJ determines that the claimant's medical condition could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must then evaluate the intensity and persistence of the claimant's symptoms, including pain, to determine their effect on the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1); *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776–77 (11th Cir. 2010). The ALJ considers all available evidence, including objective medical evidence, information about the claimant's prior work record, statements from the physicians and others, and medical opinions. 20 C.F.R. § 404.1529(c)(1)–(2). Additionally, the ALJ considers (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant took to alleviate pain or other symptoms; (5) treatment the claimant received for relief of pain or other symptoms; and (6) any measures the claimant personally used to relieve pain or other symptoms. *Id.* § 404.1529(c)(3). The ALJ evaluates the credibility of the claimant's testimony based on whether it is reasonably consistent with this evidence. *Id.* § 404.1529(c)(4).

An ALJ's determination of the credibility of a claimant's testimony regarding subjective pain is entitled to deference and a reviewing court will not disturb a clearly-articulated credibility finding with substantial supporting evidence in the record. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). Thus, if an ALJ discredits a claimant's testimony, the ALJ must articulate, explicitly and adequately, reasons for not crediting the testimony. *Holt v. Sullivan*, 921 F.2d 1221, 1223–24 (11th Cir. 1991). "Implicit in this rule is the requirement that such articulation of reasons . . . be supported by substantial evidence." *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).

Therefore, as the reviewing Court, "[t]he question is not . . . whether ALJ could have reasonably credited [claimant's pain] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938–39 (11th Cir. 2011).

The ALJ concluded that while Plaintiff's impairments could reasonably be expected to cause the symptoms he alleges, Plaintiff's statements concerning his symptoms' intensity, persistence, and limiting effects were not entirely credible. (Tr. 21.) In reaching this determination, the ALJ considered that the medical evidence showed that Plaintiff history of disk herniation had been successfully treated, and that his symptoms from his GERD condition were controlled by medication. (Tr. 21.) Next, the ALJ noted that Plaintiff was diagnosed with depression, ADD, and alcohol abuse, but found that the mental status examinations showed that Plaintiff was alert, coherent, had good eye contact, had intact concentration, and had no thinking disorders or suicidal ideations. (Tr. 22.) The ALJ considered that Plaintiff worked past the alleged onset date, until as recently as 2012, "which suggests that the symptoms may not have been as serious" as Plaintiff alleges. (Tr. 22.) Finally, the ALJ reasoned that Plaintiff's ability to participate in the daily activities he described in his testimony undermined the credibility of his allegations of total disability. (Tr. 22.)

Contrary to Plaintiff's argument, the ALJ considered appropriate factors and adequately articulated his reasons for discrediting Plaintiff's testimony about the limiting effect of his symptoms. First, regarding Plaintiff's alleged impairments of disk herniation and GERD, although the ALJ found these impairments to be severe (Tr. 18), he concluded that Plaintiff's treatment for his spine and medications for his GERD improved and controlled his symptoms. (Tr. 21.) Plaintiff's treatment and the effectiveness of his medication are both appropriate considerations in evaluating Plaintiff's credibility. 20 C.F.R. § 404.1529(c)(4). Next, the ALJ acknowledged

Plaintiff's impairments of depression and ADD, but considered objective evidence, namely mental status examinations, to conclude that this evidence did not comport with the severity of limitation Plaintiff alleged. (Tr. 22.) The ALJ's consideration of the consistency of Plaintiff's testimony with the objective evidence was proper. 20 C.F.R. § 404.1529(c)(1), (2). Finally, the ALJ's consideration of Plaintiff's daily activities— including taking care of his personal needs and his dog, cooking, attending AA meetings, watching television, playing video games, and working as a pizza delivery driver—was appropriate. *Id.* § 404.1529(c)(4).

Upon review of the evidence, the ALJ's reasoning is supported by substantial evidence. To the extent Plaintiff asks the Court to reweigh the evidence regarding Plaintiff's activities of daily living and Plaintiff's performing work after the alleged onset date (Dkt. 22 at 5), it is not the role of this Court to reweigh the evidence. *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005). Instead, the Court must defer to the ALJ's decision where, as here, it is supported by substantial evidence. *Id.* (reversing the district court's reversal of the ALJ because "the district court improperly reweighed the evidence and failed to give substantial deference to the Commissioner's decision" to discredit claimant's pain testimony). Accordingly, Plaintiff's final contention does not warrant reversal.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**RECOMMENDED**:

1. The decision of the Commissioner be **AFFIRMED**.

2. The Clerk of Court be directed to enter final judgment in favor of the Commissioner

and close the case.

**IT IS SO REPORTED** in Tampa, Florida, on May 4, 2017.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable James S. Moody, Jr.
Counsel of Record